# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

GLADYS HIGGS, Individually and as * 
legal representative and Personal
Representative of the Estate of *
DANIEL HIGGS, Deceased
1102 Pearl Lane *
New Zion, SC 29111
                                                   *

And
                                                   *

MELINDA JENKINS
211 Stokes Street *                 Case: 1:18-cv-02356    JURY DEMAND
Apt. C-101                                      Assigned To : Kollar-Kotelly, Colleen
Durham, NC 27701 *                Assign. Date : 10/5/2018

And *                Description: Personal Injury   (B-DECK)

VICTORIA HIGGS *
1812 Battle Drive
Greenville, NC 27834 *

      *Plaintiffs* *

v. *

RICHARD PALMER, M.D. *
1310 Southern Avenue, SE
Washington, DC 20032 *

And *

KHOSROW DAVACHI, M.D. *
1328 Southern Avenue, SE
Suite 310 *
Washington, DC 20032
                                                   *

And
                                                   *

KHOSROW DAVACHI, P.C.
1328 Southern Avenue, SE *
Suite 310
Washington, DC 20032 *



1

| | |
|---|---|
| And | * |
| MELANIE SCOTT-BOWLING, P.A.<br>1310 Southern Avenue, SE<br>Suite 308<br>Washington, DC 20032 | *<br><br>*<br><br>* |
| And | * |
| UNITED MEDIAL CENT, INC.<br>1310 Southern Avenue, SE<br>Washington, DC 20032 | *<br>*<br>* |
| *Defendant*S | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND ELECTION FOR JURY TRIAL

The Plaintiff, Gladys Higgs, Individually, and as Legal Representative and Personal Representative of the Estate of Daniel Higgs, Deceased, hereby files suit against the Defendants, Richard Palmer, M.D., Khosrow Davachi, M.D., Khosrow Davachi, P.C., Melanie Scott-Bowling, P.A., and United Medical Center, Inc., and for grounds states:

1. Jurisdiction and venue are proper in this Court as the events complained of that caused injury and death occurred in the District of Columbia.

2. Plaintiff Gladys Higgs is of full age, a citizen of the United States, and a resident of the State of Maryland. At all times relevant to this action, Ms. Higgs was the wife of Daniel Higgs, Deceased ("Decedent").

3. On March 8, 2017, Letters of Administration were issued by the Register of Wills for Prince George's County, Maryland appointing Ms. Higgs the Personal Representative of the Estate of Daniel Higgs, Deceased. In that capacity, Ms. Higgs is entitled to bring this wrongful death and survival action pursuant to District of Columbia Code § 12-101 and § 16-2702.

2

## FACTS COMMON TO ALL COUNTS

4. At all times relevant hereto, Defendant Richard Palmer, M.D. was a physician practicing in the field of internal medicine, and at all times relevant herein was duly licensed in the District of Columbia to provide health care services to persons in need thereof, including the Decedent. Dr. Palmer is sued individually and as an employee and real and/or ostensible agent of, and was acting within the scope of his employment and/or agency with Defendants Khosrow Davachi, P.C. and United Medical Center, Inc.

5. At all times relevant hereto, Defendant Khosrow Davachi, M.D. was a physician practicing

in the field of internal medicine, and at all times relevant herein was duly licensed in the District of Columbia to provide health care services to persons in need thereof, including the Decedent. Dr. Davachi is sued individually and as an employee and real and/or ostensible agent of, and was acting within the scope of his employment and/or agency with Defendants Khosrow Davachi, P.C. and United Medical Center, Inc.

6. At all times relevant hereto, Defendant Melanie Scott-Bowling, P.A. was a physician's assistant practicing in the field of internal medicine and on medical floors, and at all times relevant herein was duly licensed in the District of Columbia to provide health care services to persons in need thereof, including the Decedent. Ms. Scott-Bowling is sued individually and as an employee and real and/or ostensible agent of, and was acting within the scope of his employment and/or agency with Defendant United Medical Center, Inc.

7. At all times relevant hereto, Defendant Khosrow Davachi, P.C. was a medical business entity specializing in the field of internal medicine and providing health care services

through its employees and real and/or ostensible agents, to individuals in need thereof, including the Decedent.

8.      At all times relevant hereto, Defendant United Medical Center, Inc. ("UMC") was and is a medical facility offering administrative, medical, surgical, obstetrical, emergency, nursing, consultative, and other related services to the general public and in such capacity, such institution, its agents, apparent agents, servants and/or employees, administrators, medical staff, surgeons, obstetricians, emergency physicians, nurses, and consultants held themselves out as practicing ordinary standards of administrative, medical, surgical, obstetrical, nursing and consultative care and, as such, owed a duty to the Claimant to render and provide health care within the ordinary standards of administrative, medical, surgical, obstetrical, nursing and consultative care, and to exercise reasonable skill and care in the selection of its personnel to provide competent administrators, physicians, surgeons, obstetricians, nurses, and consultants, and other administrative and medical personnel, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine, surgery, obstetrics, nursing and consultative care, and to supervise and provide its patients with diagnostic, medical, administrative and consultative services and treatment commensurate with the condition from which the patient suffers and for which patient entered said institution.

9.      At all times relevant hereto, Defendants held themselves out to the public as health care providers who would render reasonably competent treatment to those who came under their professional care.

10.     At all times relevant hereto, all medical doctors, physicians assistants, nurses and consultants identified in the medical records of Daniel Higgs during his November 25, 2016 admission to UMC were agents and/or apparent agents, servants, or employees of UMC. This

includes, but is not limited to, all named Defendants to this lawsuit, Tsering Palzom, R.N., Shwit Gessesse, R.N., and any "house officer" called from 2 a.m. until 8:35 a.m. on November 27, 2016 concerning Mr. Higgs' condition and/or status.

11. On or about November 25, 2016, the Decedent presented to the emergency room of UMC with a history of falls within the last month, and with complaints of generalized weakness, dizziness, and a feeling like he was going to pass out. The Decedent was admitted to UMC to monitor his status and treat any neurological conditions which could arise. Defendant Palmer did the initial assessment on the Decedent. Defendant Davachi was the attending physician assigned to care for the Decedent.

12. Admission orders called for neurological checks every 12 hours. There is no indication the fall precaution orders were given.

13. The Decedent's neurological status was checked every 12 hours as ordered. Up until 8pm on November 26, 2016, the Decedent's pupillary exam was excellent and his GCS score was 15.

14. At or around 2 a.m. on November 27, 2016, the Decedent was found on the floor of his room. Obviously, proper fall precautions were not put into place or implemented. Despite his know high fall risk, bed rails were not placed properly and/or other precautions were not properly taken to make sure the Decedent did not fall from his bed.

15. The nurse caring for him at the time did not do a neurological assessment on the Decedent once she found him on the floor. Further, she did not perform a neurological assessment on him every 30 minutes to an hour during the remainder of her shift to monitor for head trauma. Additionally, she again did not implement proper fall precautions for the Decedent. All of these inactions were contrary to the standard of care.

16. The nurse caring for him at the time did, however, call the house officer on duty. The identity of this physician is unknown. However, contrary to the standard of care, this physician did not do a neurological assessment of the Decedent, did not order a stat head CT, and did not order neurological checks every 30 minutes to an hour.

17. Defendant Scott-Bowling was also contacted after the Decedent was found on the floor. Contrary to the standard of care, Defendant Scott-Bowling did not do a neurological assessment of the Decedent, did not order a stat head CT, and did not order neurological checks every 30 minutes to an hour. Instead, Defendant Scott-Bowling ordered Benadryl for the Decedent. Further, after the Decedent escaped his room in confusion an hour later, Defendant Scott-Bowling did not do a neurological assessment of the Decedent, did not order a stat head CT, and did not order neurological checks every 30 minutes to an hour. Instead, contrary to the standard of care, she only ordered a sitter to watch the Decedent. All of Defendant Scott-Bowling's actions were contrary to the standard of care.

18. It is believed that Defendant Davachi was also informed of the fall around 2:22 a.m. but only ordered respiratory therapy for the Decedent. Contrary to the standard of care, Defendant Davachi did not do a neurological assessment of the Decedent, did not order a stat head CT, and did not order neurological checks every 30 minutes to an hour.

19. At approximately 8:34 a.m., the Decedent was found unresponsive with fixed and dilated pupils and a GCS score of 3. Rapid response was called and an immediate head CT was performed. That head CT revealed a massive right subdural hematoma with marked right-to-left shift along with subfalcine and uncal herniation and complete obliteration of the right ventricles and left ventricular entrapment. Consequently, the Decedent was airlifted to Washington Hospital Center for neurosurgical intervention. Because no care would have changed the

Decedent's outcome, surgery was not performed. The Decedent passed away on December 6, 2016.

## COUNT I – MEDICAL NEGLIGENCE
### (Survival Action)

20. At all times relevant hereto, all Defendants, individually, and through their respective agents and employees, real and/or ostensible, including, but not limited to, the nursing staff and the individually named defendants, owed a duty to the Decedent to use that degree of care and skill which a reasonably competent practitioner would employ in the same or similar circumstances.

21. At all times relevant hereto, all Defendants, individually, and through their respective agents and employees, real and/or ostensible, including, but not limited to, the nursing staff and the individually named defendants, were negligent in their care and treatment of the Decedent in the following ways, among others:

    a. Failure to order proper fall precautions upon admission and throughout the Decedent's hospitalization;

    b. Failure to implement proper fall precautions upon admission and throughout the Decedent's hospitalization;

    c. Negligently allowing the Decedent to fall;

    d. Failure to order timely neurological checks after the Decedent's fall;

    e. Failure to perform timely neurological checks after the Decedent's fall;

    f. Failure to properly and timely assess the Decedent after his fall;

    g. Failure to order a stat CT scan immediately after the Decedent's fall;

    h. Inappropriately ordered Benadryl and a sitter after the fall; and

22. Defendants were otherwise negligent. As a direct and proximate result of the aforementioned negligence of the Defendants, the Decedent suffered conscious pain and suffering,

bodily injuries, disabilities, mental anguish, apprehension of impending death, inconvenience and discomfort, the loss of the ability to enjoy the normal pleasures of life, the loss of the ability to engage in life's usual activities, unnecessary procedures, medical care and expenses, financial loss, funeral expenses, and other painful sequelae as a result of his massive brain bleed.

23. Had the Defendants complied with the applicable standards of care, the Decedent's brain bleed would have been: (a) avoided; and (b) diagnosed earlier and more timely. The Decedent would have received the appropriate treatment and, to a reasonable degree of medical certainty, he would have survived to a normal life expectancy. However, the Defendants' deviations from the applicable standards of care allowed the Decedent to develop a brain bleed that caused his death. Further, once they caused the bleed, the Defendants' deviations from the standards of care allowed the bleed to progress to a point where treatment was futile.

24. The injuries, damages and death complained of herein were proximately caused by the Defendants' negligence with no negligence on the part of the Decedent.

**WHEREFORE**, Gladys Higgs, as Legal Representative and Personal Representative of the Estate of Daniel Higgs, hereby demands judgment against the Defendants, jointly and severally, in the full sum of Ten Million Dollars ($10,000,000.00) plus costs and interest.

### COUNT II – MEDICAL NEGLIGENCE
### (Wrongful Death)

25. The Plaintiffs hereby adopt and incorporate Paragraphs 1 through 24 as if fully stated herein.

26. As a direct and proximate result of the Defendants' negligence as set forth above, the Decedent died on December 6, 2016.

27. As a further direct and proximate result of the Defendants' negligence as set forth above, the Decedent's heirs, including his wife and children, were caused to sustain, among other

damages, loss of financial support, loss of services, and loss of care, education, training, guidance and personal advice.

28.  The injuries, damages and death complained of herein were directly and proximately caused by the negligence of the Defendants, with no negligence on the part of the Plaintiffs.

**WHEREFORE**, Gladys Higgs, Individually and as Personal Representative of the Estate of Daniel Higgs, hereby demands judgment against the Defendants, jointly and severally, in the full sum of Ten Million Dollars ($10,000,000.00) plus costs and interest.

ARFAA LAW GROUP

Julia R. Arfaa, DC Bar #985549
Jonathan Cusson, DC Bar #987592
2002 Clipper Park Rd, Suite 300
Baltimore, Maryland 2121
410. 889.1850 (tele)
410.235.3297 (fax)
julia@arfaalawgroup.com
jonathan@arfaalawgroup.com
*Attorneys for Plaintiff*

## IN THE UNTED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GLADYS HIGGS, Individually and as legal representative and Personal Representative of the Estate of DANIEL HIGGS, Deceased 1102 Pearl Lane New Zion, SC 29111 | * * * * | |
| And | * | |
| MELINDA JENKINS 211 Stokes Street Apt. C-101 Durham, NC 27701 | * * | Case No.: |
| And | * | |
| VICTORIA HIGGS 1812 Battle Drive Greenville, NC 27834 | * * | |
| *Plaintiffs* | * | |
| v. | * | |
| RICHARD PALMER, M.D. 1310 Southern Avenue, SE Washington, DC 20032 | * * | |
| And | * | |
| KHOSROW DAVACHI, M.D. 1328 Southern Avenue, SE Suite 310 Washington, DC 20032 | * * * | |
| And | * * | |
| KHOSROW DAVACHI, P.C. 1328 Southern Avenue, SE Suite 310 Washington, DC 20032 | * * | |
RECEIVED
Mail Room
OCT - 5 2018
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1

|  |  |
|---|---|
| And | * |
| MELANIE SCOTT-BOWLING, P.A.<br>1310 Southern Avenue, SE<br>Suite 308<br>Washington, DC 20032 | *<br><br>*<br><br>* |
| And | * |
| UNITED MEDIAL CENT, INC.<br>1310 Southern Avenue, SE<br>Washington, DC 20032 | *<br><br>*<br><br>* |
| *Defendant*S | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ELECTION FOR JURY TRIAL

COMES NOW THE PLAINTIFFS, Gladys Higgs, Melinda Jenkins and Victoria Higgs, and hereby elect a jury trial in the above-captioned matter.

ARFAA LAW GROUP

*Julia R. Arfaa*
Julia R. Arfaa, DC Bar #985549
Jonathan Cusson, DC Bar #987592
2002 Clipper Park Rd, Suite 300
Baltimore, Maryland 2121
410. 889.1850 (tele)
410.235.3297 (fax)
julia@arfaalawgroup.com
jonathan@arfaalawgroup.com
*Attorneys for Plaintiffs*

2